**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. 15 CV 4081

LP FUNDING, LLC

Plaintiff,

v.

TANTECH HOLDINGS, LTD.,

Defendant.

JUDGE SWAIN

**JURY TRIAL DEMANDED**



**COMPLAINT**

Plaintiff LP Funding, LLC ("LP Funding"), by and through its undersigned

counsel, hereby files this action against Defendant Tantech Holdings, Ltd. ("Defendant"

or "Tantech") and, in furtherance thereof, respectfully alleges as follows:

**NATURE OF THE CASE**

1.      This case surrounds Defendant's breach of a letter agreement (the

"Agreement") (attached hereto as "Exhibit A") between LP Funding and Defendant

(collectively, the "Parties") relating to Defendant's initial public offering and LP's

consulting services associated therewith.

2.      LP Funding performed as per the terms of the Agreement and, upon

requesting to be compensated as per the terms of the Agreement, learned that Defendant

refused to provide LP funding with such compensation.  By engaging in such conduct –

1

as more fully detailed below – Defendant breached its contractual obligations as per the Agreement.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to Title 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between a citizen of a state and a citizen of a foreign state.

4.      Venue is proper in the Southern District of New York pursuant to Title 28 U.S.C. § 1391(b)(2) in that a substantial portion of the events giving rise to this action occurred in the Southern District of New York.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails and interstate telephone communications.

## PARTIES

6.      LP Funding was, at all relevant times, a Nevada limited liability company whose principal place of business is located at 500 East 77th Street, Suite 1709, New York, New York 10162.

7.      Defendant is a British Virgin Islands company whose principal place of business is in the People's Republic of China.  Defendant is publicly traded on the NASDAQ Stock Market (the "NASDAQ"), an American stock exchange, under the ticker symbol "TANH."

## FACTS

### I.    The Agreement

8.    On or about August 30, 2014, the Parties entered into the Agreement wherein LP Funding would introduce Defendant to an investment bank for the purposes of Defendant completing an initial public offering ("IPO") on a stock exchange located in the United States.

9.    After Defendant concluded such IPO, LP Funding was to perform certain services "at [Defendant's] direction[.]" *See* Exhibit A at 1.

10.    In exchange for LP Funding's (1) introduction to the company of an investment banking firm to handle Defendant's IPO and (2) performance of certain services at Defendant's direction, the Agreement required Defendant to pay LP Funding as follows:

> A.  Upon the <u>closing</u> of the IPO, Defendant was provide LP Funding with a warrant (the "Warrant") to acquire 250,000 shares of Defendant's common stock at 120% of the IPO share price; and

> B.  Such warrant (1) was to be exercisable at any time during the five years commencing with the date of issuance, (2) was to contain customary provisions concerning anti-dilution, rights of co-sale or registration, etc., (3) was to contain a provision enabling LP Funding to effect a net issuance (cashless exercise), and (4) would be transferrable to LP Funding's employees or affiliates.

11.     Pursuant to the terms of the Agreement, Defendant had the ability to terminate the Agreement at any time by giving LP Funding at least thirty (30) business days' prior written notice of such termination.

**II.     LP Funding's Performance and Defendant's Breach**

12.     LP Funding introduced Defendant to two investment banks: Burnham Securities, Inc. ("Burnham"), and View Trade Securities, Inc. ("View Trade"). Defendant initially engaged Burnham to complete its IPO, but later terminated such engagement prior to the completion of any IPO.  Ultimately, Defendant engaged View Trade, and View Trade completed Defendant's IPO on the NASDAQ.  Defendant's announcement of its IPO using View Trade is attached hereto as "Exhibit B."

13.     As required by the Agreement, LP Funding remained willing and able to perform the services listed in the Agreement at Defendant's direction for a period of one (1) year after the closing of Defendant's IPO.  Defendant never directed LP Funding to perform any such services, but never terminated the Agreement between the Parties.

14.     On approximately May 1, 2015, LP Funding sent Defendant a letter (attached hereto as "Exhibit C") requesting that Defendant abide by the terms of the Agreement by issuing the Warrant.  Defendant refused to issue the Warrant.

### CAUSES OF ACTION

### COUNT 1 – BREACH OF CONTRACT

15.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-14 as if fully set forth in this Count.

16.     LP Funding and Defendant entered into the Agreement wherein the parties agreed that LP Funding would (1) introduce Defendant to an investment banking firm to

complete Defendant's IPO, and then (2) perform certain services at Defendant's direction for a one year period after the IPO's closing. Defendant retained the right to terminate the Agreement by giving LP Funding thirty (30) business days prior written notice of such cancellation.

17.     LP Funding performed its obligations under the Agreement by (1) introducing Defendant to the investment banking firm that completed Defendant's IPO, and (2) remaining ready and willing to perform the services contemplated by the Agreement at Defendant's direction for a one year period after the IPO's closing.

18.     Defendant never directed LP Funding to perform any such services, but never terminated the Agreement. Defendant has now refused to compensate LP Funding as per the terms of the Agreement.

19.     By engaging in the conduct described herein, Defendant breached the Agreement in that Defendant failed to compensate LP Funding as per the Agreement's terms.

20.     As a direct and proximate result of Defendant's breaches, Defendant has caused Plaintiff to suffer damages in an amount between $1,800,000.00 and $2,500,000.00.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury for all issues so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiff and against Defendant:

a.     For actual damages in an amount to be proven at trial but in no event less than $1,800,000.00;

b.     For interest and costs; and

5

c.      For such other relief as this Court may deem just and proper.

**DATED:**      May 26, 2015
              Coral Gables, Florida

                            Respectfully Submitted,

                            **HUNTER TAUBMAN WEISS LLP**

                            */s/ Mark David Hunter*
                            Mark David Hunter, Esquire
                            New York Bar No. 4017331
                            Jenny Johnson-Sardella, Esquire
                            New York Bar No. 4225850
                            255 University Drive
                            Coral Gables, Florida 33134
                            Telephone:     (305) 629-8816
                            Facsimile:     (305) 629-8877
                            E-Mail:        mhunter@htflawyers.com
                                           jsardella@htflawyers.com

# EXHIBIT

# A

LP FUNDING LLC

**LP FUNDING, LLC.**

377 East 33rd Street
New York, NY 10016
USA

August 30, 2013

Zhengyu Wang, Chairman
Tantech Holdings, Ltd.
c/o Zhejiang Tantech Bamboo Technology Co., Ltd.
No. 10 Cen Shan Road, Shuige Industrial Zone
Lishui City, Zhejiang Province
PRC

Dear Mr.Wang:

This letter agreement ("Agreement") confirms the terms and conditions of the engagement of LP Funding, LLC. ("LP") by Tantech Holdings, Ltd., including its subsidiaries and affiliates (the "Company") to render certain financial advisory and investment banking services to the Company after completion of the Company's initial public offering with an investment bank introduced by LP on a US stock exchange (the "IPO"). The parties desire to retain LP to assist the Company with its transition from a private company doing business primarily in China to a public company listed in the United States.

1. **Services:** For one (1) year after closing of the Company's IPO, LP agrees to perform services (the "Services") at the Company's direction that include, but are not limited to, the following:

   (a)   LP will advise the Company on shareholder communications, corporate best practices for publicly listed companies in the United States, compliance with regulatory requirements, cooperation with investment banks and institutional investors and such other matters related to the Company's existence as a publicly traded company in the United States;

   (b)   LP will arrange meetings with potential investors, investment banks and financial news media;

   (c)   LP will assist the Company in preparing for and participating in presentations to potential investors, investment banks and financial news media;

   (d)   LP will provide such other advisory services as the parties may agree are advisable to promote the company's successful transition from private to public company in the United States.

1

LP FUNDING LLC

# LP FUNDING, LLC.

377 East 33rd Street
New York, NY 10016
USA

August 30, 2013

Zhengyu Wang, Chairman
Tantech Holdings, Ltd.
c/o Zhejiang Tantech Bamboo Technology Co., Ltd.
No. 10 Cen Shan Road, Shuige Industrial Zone
Lishui City, Zhejiang Province
PRC

Dear Mr. Wang:

This letter agreement ("Agreement") confirms the terms and conditions of the engagement of LP Funding, LLC. ("LP") by Tantech Holdings, Ltd., including its subsidiaries and affiliates (the "Company") to render certain financial advisory and investment banking services to the Company after completion of the Company's initial public offering with an investment bank introduced by LP on a US stock exchange (the "IPO"). The parties desire to retain LP to assist the Company with its transition from a private company doing business primarily in China to a public company listed in the United States.

1. **Services:** For one (1) year after closing of the Company's IPO, LP agrees to perform services (the "Services") at the Company's direction that include, but are not limited to, the following:

    (a)  LP will advise the Company on shareholder communications, corporate best practices for publicly listed companies in the United States, compliance with regulatory requirements, cooperation with investment banks and institutional investors and such other matters related to the Company's existence as a publicly traded company in the United States;

    (b)  LP will arrange meetings with potential investors, investment banks and financial news media;

    (c)  LP will assist the Company in preparing for and participating in presentations to potential investors, investment banks and financial news media;

    (d)  LP will provide such other advisory services as the parties may agree are advisable to promote the company's successful transition from private to public company in the United States.

1

LP FUNDING LLC

2. **Fees and Expenses:**

   A. **Fees**

   Upon the closing date of the IPO, and as payment for the Services, the Company agrees to grant to LP or its designee(s) a warrant (the "Warrant") to acquire, at 120% of the offering per share price, 250,000 shares of the Company's common stock. In the event the IPO does not close, the Company will not be public and, as a result, the Services will not be required; consequently, the Warrant would not be issued to LP.

   The Warrant will be exercisable at any time during the five years commencing with the date of issuance, will contain customary provisions concerning anti-dilution, rights of co-sale or registration, etc., will contain a provision enabling the holder to effect a net issuance (cashless) exercise, and will be transferable to employees or affiliates of LP.

3. **Information:**  The Company will furnish LP with such material regarding the business and financial condition of the Company as may be required to allow LP to perform the Services, all of which will be accurate and complete in all material respects.  LP is relying, without independent verification, on the accuracy and completeness of all information furnished to LP.

4. **Confidentiality:** All non-public information concerning the Company which is given to LP will be used by LP solely in the course of the performance of its Services hereunder and will be treated confidentially by LP and any retained advisors and agents for as long as such information remains non-public.  Except as otherwise required by law, LP will not use such information or disclose such information to a third party, other than its representatives who have a need to know such information in connection with the transaction contemplated by this Agreement and who agree to keep such information confidential.

5. **Term:**  The Company may terminate this Agreement at any time by giving LP at least thirty (30) business days' prior written notice of such termination.

6. **Sole and Entire Agreement, Binding Effect:** This Agreement is the sole and entire agreement between the parties pertaining to its subject matter and supersedes all prior agreements, representations and understandings of the parties.  No modifications of this Agreement shall be binding unless agreed to in writing by LP and the Company.  This Agreement shall be binding on and shall inure to the benefit of the successors and assigns of the parties hereto.

7. **Governing Law:** This Agreement may not be amended or modified except in writing signed by each of the parties and shall be governed by and construed and enforced in accordance with the laws of the State of New York.

2

LP FUNDING LLC

2.  **Fees and Expenses:**

    A. **Fees**

    Upon the closing date of the IPO, and as payment for the Services, the Company agrees to grant to LP or its designee(s) a warrant (the "Warrant") to acquire, at 120% of the offering per share price, 250,000 shares of the Company's common stock. In the event the IPO does not close, the Company will not be public and, as a result, the Services will not be required; consequently, the Warrant would not be issued to LP.

    The Warrant will be exercisable at any time during the five years commencing with the date of issuance, will contain customary provisions concerning anti-dilution, rights of co-sale or registration, etc., will contain a provision enabling the holder to effect a net issuance (cashless) exercise, and will be transferable to employees or affiliates of LP.

3.  **Information:** The Company will furnish LP with such material regarding the business and financial condition of the Company as may be required to allow LP to perform the Services, all of which will be accurate and complete in all material respects.  LP is relying, without independent verification, on the accuracy and completeness of all information furnished to LP.

4.  **Confidentiality:** All non-public information concerning the Company which is given to LP will be used by LP solely in the course of the performance of its Services hereunder and will be treated confidentially by LP and any retained advisors and agents for as long as such information remains non-public.  Except as otherwise required by law, LP will not use such information or disclose such information to a third party, other than its representatives who have a need to know such information in connection with the transaction contemplated by this Agreement and who agree to keep such information confidential.

5.  **Term:**  The Company may terminate this Agreement at any time by giving LP at least thirty (30) business days' prior written notice of such termination.

6.  **Sole and Entire Agreement, Binding Effect:** This Agreement is the sole and entire agreement between the parties pertaining to its subject matter and supersedes all prior agreements, representations and understandings of the parties.  No modifications of this Agreement shall be binding unless agreed to in writing by LP and the Company.  This Agreement shall be binding on and shall inure to the benefit of the successors and assigns of the parties hereto.

7.  **Governing Law:** This Agreement may not be amended or modified except in writing signed by each of the parties and shall be governed by and construed and enforced in accordance with the laws of the State of New York.

2

LP FUNDING LLC

8. **USA Patriot Act:** LP is committed to complying with U.S. statutory and regulatory requirements designed to combat money laundering and terrorist Transaction. The USA Patriot Act requires that all financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures.

Kindly indicate your assent to the terms and conditions of our understanding by signing and returning a copy of this letter, the other copy of which is for your files. We are looking forward to working with you.

Very truly yours,

LP FUNDING, LLC.

By: _____
William H. Luckman

AGREED AND ACCEPTED
THIS 30th DAY OF AUGUST, 2013

Tantech Holdings Ltd.

By: _____

3

LP FUNDING LLC

8. <u>USA Patriot Act:</u> LP is committed to complying with U.S. statutory and regulatory requirements designed to combat money laundering and terrorist Transaction. The USA Patriot Act requires that all financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures.

Kindly indicate your assent to the terms and conditions of our understanding by signing and returning a copy of this letter, the other copy of which is for your files.  We are looking forward to working with you.

Very truly yours,

LP FUNDING, LLC.

By: _____
        William H. Luckman

AGREED AND ACCEPTED
THIS 30th DAY OF AUGUST, 2013

Tantech Holdings Ltd.

By:     _____

        _____

3

# EXHIBIT

# B

# Tantech Holdings Ltd. Announces Pricing of Initial Public Offering

LISHUI, China, March 24, 2015 /PRNewswire/ -- Tantech Holdings Ltd. (NASDAQ: TANH (http://studio-5.financialcontent.com/prnews?Page=Quote&Ticker=TANH)), a pioneer in China's high tech carbonized bamboo industry and specialized manufacturer of bamboo charcoal based products with a number of applications from industrial energy to agricultural and household consumer items, today announced the pricing of its initial public offering of 3,200,000 shares of its common stock at a price to the public of $4.00 per share for a total of $12,800,000 before offering expenses. Tantech Holdings Ltd. and a selling shareholder will receive proceeds from the sale of 1,600,000 shares each.  The shares are expected to begin trading on NASDAQ on March 24, 2015 under the symbol "TANH".

ViewTrade Securities, Inc., a global provider of full service securities brokerage, investment banking, corporate/advisory and trading platform services, acted as sole book-running manager for the offering.

A registration statement relating to these securities has been filed with the Securities and Exchange Commission and was declared effective on March 18, 2015.  This press release shall not constitute an offer to sell or the solicitation of an offer to buy, nor shall there be any sale of these securities in any state or jurisdiction in which such an offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such state or jurisdiction.

The offering will be made only by means of a prospectus.  A copy of the final prospectus related to the offering may be obtained, when available, from ViewTrade Securities, via email: IB@Viewtrade.com (http://www.prnewswire.com/news-releases/mailto:IB@Viewtrade.com) or standard mail at ViewTrade Securities, 7280 W Palmetto Park Rd, #310, Boca Raton, FL 33433, Attn: Prospectus Department.

**About Tantech Holdings Ltd.**

Based in Lishui,China, Tantech Holdings Ltd. has an extensive product portfolio in excess of 100 different products, separated into three separate categories:

1.  Charcoal Doctor branded products for daily use including both solid state and liquid state products.

2.  Barbeque charcoal products

3.  Industrial fuel compounds for electric double layer capacitors (EDLC) devices which feature more energy (energy density) than a traditional capacitor and more power(power density) than current "standard" batteries allowing for applications in:

- Electric/Hybrid electric vehicle power supply
- Immediate high power supply; high power energy storage, electric pulse power supply
- Renewable (solar/wind) energy storage buffer systems
- Uninterruptable power supply (UPS) systems mainly for vital-use and military systems

**Investor Relations Contact:**



David L Richmond

585-314-1619

Yantsee@aol.com (http://www.prnewswire.com/news-releases/mailto:Yantsee@aol.com)

SOURCE Tantech Holdings Ltd.

**Find this article at:**
http://www.prnewswire.com/news-releases/tantech-holdings-ltd-announces-pricing-of-initial-public-offering-300055090.html

☐ Check the box to include the list of links referenced in the article.

# EXHIBIT

# C

**LP Funding, LLC**
**500 East 77th Street, #1709**
**New York, NY 10162**
**+1.917.828.7431**

May 1, 2015

Mr. Ningfang Liang
c/o Zhejiang Tantech Bamboo Technology Co., Ltd.
No. 10 Cen Shan Road, Shuige Industrial Zone
Lishui City, Zhejiang Province 323000
People's Republic of China

Re: August 30, 2013 LP Funding, LLC Engagement

Mr. Liang:

Congratulations on your recent initial public offering ("IPO"). Since we all spent a great deal of time preparing the Company for this event, I am very pleased at the success of the IPO. It also appears that the Company's stock is doing quite well in the after-market.

As you know, our agreement with the Company, dated August 30, 2013 (the "Agreement"), specified that upon completion of the IPO, LP Funding would be issued 250,000 warrants to purchase shares of the Company's common stock at an exercise price per share equal to 120% of the per share price of the Company's common stock in the IPO. I have attached a copy of the Agreement for your convenience.

Please issue our 250,000 warrants in accordance with the terms of Agreement to my attention at our address set forth above.

Thank you in advance and I wish you continued success.

Kindest regards,

William Luckman
LP Funding, LLC