UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

LP FUNDING, LLC,

                Plaintiff,

  -v-                                              No.  15CV4081-LTS

TANTECH HOLDINGS, LTD.,

                Defendant.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Before the Court is the timely motion of Defendant Tantech Holdings, Ltd. ("Tantech" or "Defendant") for leave to amend its Answer to the Complaint filed by Plaintiff LP Funding, LLC ("LP Funding" or "Plaintiff") in this case.  (Docket Entry No. 1.)  Defendant seeks to assert New York law counterclaims of fraudulent inducement and fraud as against LP Funding, and to add William H. Luckman ("Luckman") as a third-party counterclaim-defendant. The Court has considered the parties' submissions thoroughly and, for the reasons stated herein, grants Defendant's motion.

BACKGROUND[1]

Plaintiff has alleged that Defendant breached an agreement between LP Funding and Tantech by failing to provide compensation owed in connection with consultation services related to Defendant's initial public offering ("IPO"). (See Docket Entry No. 1, Complaint ¶ 1.) In June 2013, Tantech was considering hiring Burnham Securities ("Burnham") as the underwriter for its IPO on a United States securities exchange. (Counterclaims ¶ 6.) In or about June 2013, Tantech's CEO was introduced to Luckman at a meeting in Beijing, China. At the meeting, Luckman indicated that he was responsible for Burnham's China operations. (Id. ¶¶ 7-8.) Luckman also advised Tantech's CEO, Zhengyu Wang, that Burnham would require, in exchange for underwriting services, a warrant to purchase 16% of the shares issued in connection with the IPO. (Id. ¶ 9.) In July 2013, several Burnham employees, including Luckman, traveled to China and met with certain of Tantech's Board members. (Id. ¶ 13.) Following this meeting, Tantech decided to retain Burnham as its underwriter. (Id. ¶ 23.)

Shortly thereafter, Tantech received two draft agreements: one between Tantech and Burnham (the "Burnham Agreement"), and the other between Tantech and Plaintiff (the "LP Agreement"). (Counterclaims ¶ 24.) The Burnham Agreement provided for an 8% warrant, and

---

[1] The facts recited herein are drawn from the Complaint in this action and from Defendant's proposed Amended Answer, Affirmative Defenses and Counterclaims. (See Docket Entry No. 26, Declaration of Harry H. Rimm in Support of Motion to Amend Answer to Add Counterclaims and Counterclaim-Defendant ("Rimm Decl."), Ex. B ("Counterclaims").) The Complaint is incorporated into the record by Defendant's reference. (See Counterclaims ¶ 18.) See Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("Relying on Rule 10(c), we have held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). Facts alleged in the Counterclaims are accepted as true for the purposes of the instant motion practice. See, e.g, Paramount Pictures Corp. v. Puzo, 12CV1268-AJN, 2012 WL 4465574, at *1 (S.D.N.Y. Sept. 26, 2012).

the LP Agreement provided for a second warrant to purchase 250,000 Tantech shares at a certain price. (Counterclaims ¶¶ 25-26.) Tantech believed that the warrants called for by the two agreements totaled approximately 16% of the shares to be issued and that the compensation structure under the agreements was consistent with the Burnham compensation structure that Luckman had previously discussed. (Id. ¶ 27.) Tantech also believed that the warrants were ultimately meant to compensate Burnham because LP Funding was owned by, or under common ownership with, Burnham. (Id. ¶ 30.) Both agreements were executed in or about August 2013. (Id. ¶ 32.) From the time that Tantech was initially introduced to Luckman to the time that the LP Agreement was executed, Luckman never indicated that he was associated with, or was providing services on behalf of, any entity other than Burnham. (Id. ¶¶ 10, 12, 20, 22.) Moreover, Luckman never disclosed that the warrants provided for by the agreements constituted anything other than compensation for Burnham's services. (Id. ¶¶ 31-33.)

While preparing for the IPO, Tantech became dissatisfied with Burnham's services and terminated its contract with Burnham. (Id. ¶¶ 41-42.) Tantech believed that, in so doing, it had also terminated its contractual relationship with Plaintiff. (Id. ¶ 43.) Burnham retained another investment bank as its underwriter and successfully completed the IPO on or about March 24, 2015. (Id. ¶¶ 42, 44.)

Plaintiff thereafter brought this action, alleging that Defendant had breached the LP Agreement by refusing to compensate Plaintiff in accordance with the terms of the Agreement. (Complaint ¶¶ 15-19.) Defendant initially answered the Complaint. (See Docket Entry No. 19.) On October 30, 2015, the Court issued a Pretrial Scheduling Order, setting a deadline of November 30, 2015, for the filing of applications to amend pleadings. (See Docket Entry No. 23.)

DISCUSSION

Leave to Amend to Add Counterclaims

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a). While granting or denying leave to amend is a decision entrusted to the discretion of the district court, Reisner v. General Motors Corp., 511 F. Supp. 1167, 1171 (S.D.N.Y. 1981), the Supreme Court has held that leave should be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies on the part of the party seeking to amend; (2) allowing amendment would cause the opposing party undue prejudice; or (3) amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). Here, Plaintiff's objections to amendment rest solely on Plaintiff's position that the Counterclaims would be futile. As the party opposing amendment, Plaintiff "bears the burden of establishing that an amendment would be futile." Ferring B.V. v. Allegran, Inc., 4 F. Supp. 3d 612, 618 (S.D.N.Y. 2014). "In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 604 (2d Cir. 2005) (internal quotation marks and citation omitted).

Defendant seeks to amend its Answer to add counterclaims of fraudulent inducement and fraud. (See Counterclaims ¶¶ 45-67.) Thus, the futility of the proposed counterclaims must be evaluated in light of the heightened pleading standard for fraud claims established by Federal Rule of Civil Procedure 9(b), which places "two further burdens on fraud plaintiffs – the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state." Loreley Financing (Jersey) No.3 Ltd. v. Wells Fargo

Securities, LLC, 797 F.3d 160, 171 (2d Cir. 2015). To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission that induced the party to sign the contract; (2) scienter; (3) reliance; and (4) injury." Davidowitz v. Patridge, 08CV6962-NRB, 2010 WL 5186803, at *7 (S.D.N.Y. Dec. 7, 2010) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996)). To state a fraud claim under New York law, a plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding, 88 N.Y.2d at 421). Here, Plaintiff has proffered two arguments concerning the alleged futility of Defendant's proposed amendment: that Defendant has failed to allege scienter sufficiently,[2] and that Defendant cannot, as a matter of law, allege that it reasonably relied on alleged misrepresentations or omissions made by Plaintiff or Luckman in light of the fact that the LP Agreement included a merger clause.

Scienter need not be alleged with great specificity to survive a Rule 12(b)(6) motion under Rule 9(b) standards. See Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990). "Nonetheless, plaintiffs have the burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter. Such a basis may be shown through allegations of a motive to deceive and access to accurate information." Cohen v.

---

[2] The term "scienter" – the requisite mental state for a claim of fraud or fraudulent inducement – is defined as "an intent to deceive, manipulate, or defraud." See Dekalb County Pension Fund v. Transocean Ltd., No. 14-0894-CV, __ F.3d __, 2016 WL 1055363, at *7 n.74 (2d Cir. Mar. 17, 2016) (citing Black's Law Dictionary (10th Ed., 2014)).

Koenig, 25 F.3d 1168, 1173-74 (2d Cir. 1994) (internal quotations and citations omitted). Defendant alleges that Luckman was a senior officer or principal of Plaintiff at all relevant times, that he held himself out as representing Burnham only and stated that the 16% warrant quantity was required as compensation for Burnham, and that he did not disclose his own affiliation with Plaintiff or that he was acting for any interest other than that of Burnham in negotiating the agreements. (Counterclaims ¶¶ 3, 10-12, 19-22, 31.) Defendant thus alleges facts indicating that Luckman's statements and omissions were knowingly false when made, and that he had a motive (gain from and/or for Plaintiff, his undisclosed principal) to deceive, making out the requisite basis for an inference of scienter.

        Plaintiff also argues that Defendant cannot, as a matter of law, allege reasonable reliance on any purported misrepresentation or omissions because the LP Agreement includes a merger clause, which Plaintiff argues categorically precludes Defendant from demonstrating reasonable reliance. Persuasive authority is, however, to the contrary. See Century Pacific, Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 228 (S.D.N.Y. 2007) (holding that a merger clause will preempt an action for fraud under New York law only "where the merger clause expressly references a specific subject of prior representations"; and "where the clause was included in a multi-million dollar transaction that was executed following negotiations between sophisticated business people and a fraud defense is inconsistent with other specific recitals in the contract") (internal citations omitted); see also Kwon v. Yun, 606 F. Supp. 2d 344, 357-58 (S.D.N.Y. 2009) (merger clause does not bar allegation of reasonable reliance where no specific representation explicitly referenced in the merger clause as one not being relied upon is apparent on the face of the contract); CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A., 07CV11078-LTS, 2009 WL 2033048, at *5 (S.D.N.Y. July 13, 2009) (merger clause and disclaimer held preclusive of fraud

claim in connection with high value complex transaction where fraud claims were inconsistent with disclaimer and express contract provision).[3]  Here, the merger clause at issue is a general one, which makes no reference to any specific prior representations.  (See Complaint, Ex. A.)  Furthermore, the proposed counterclaims do not, on their face, indicate that the transaction at issue here was of such a sophisticated character that preclusion of the fraud claim is warranted as a matter of law.  The Court thus concludes that Plaintiff has failed to satisfy its burden of demonstrating that the proposed amendment would be futile.

The Court will, accordingly, grant Defendant leave to amend its Answer to add the proposed counterclaims.

Leave to Add a Third-Party Counterclaim-Defendant

Federal Rule of Civil Procedure 20(a)(2) provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will rise in the action."  See Fed. R. Civ. P. 20(a)(2).  Defendant moves for leave to amend its Answer to add Luckman as a third-party counterclaim-defendant to the fraudulent

---

[3]  Plaintiff's cited authorities likewise acknowledge that a general merger clause is not an absolute bar to a finding of reasonable reliance.  See Junk v. Aon Corp., 07CV4640-LMM, 2007 WL 4292034, at *7 (S.D.N.Y. Dec. 3, 2007) (stating that, "though not an outright bar to [a fraudulent inducement claim], the existence of a merger clause does increase a court's reluctance to determine that a plaintiff reasonably relied on an oral representation" and finding that sophistication of plaintiff in that case warranted dismissal of claim); Robinson v. Deutsche Bank Trust Co. Americas, 572 F. Supp. 2d 319, 323 (S.D.N.Y. 2008) (acknowledging that "[u]nder New York law, . . . a general merger clause does not, standing alone, preclude a claim of fraudulent inducement").

inducement and fraud counterclaims.

"In deciding whether to permit joinder, courts apply the same standard of liberality afforded to motions to amend pleadings under Rule 15." Lawrence v. Starbucks Corp., 08CV3734-LTS, 2009 WL 4794247, *2 (S.D.N.Y. Dec. 10, 2009) (internal quotation omitted). Plaintiff's opposition to the joinder of Luckman is premised solely on Plaintiff's argument regarding the futility of Defendant's proposed counterclaims. (See Pl. Memo at p. 6.) The Court has rejected Plaintiff's futility argument and therefore grants Defendant leave to join Luckman as a third-party counterclaim-defendant in this action.

CONCLUSION

For the foregoing reasons, Defendant's motion for leave to amend its Answer to add counterclaims of fraudulent inducement and fraud and to add Luckman as a third-party counterclaim-defendant is granted in its entirety. Defendant is hereby directed to file its Amended Answer, Affirmative Defenses and Counterclaims – as proposed in Exhibit B to Docket Entry Number 26 – no later than **Wednesday, May 4, 2016,** and to serve it promptly upon Mr. Luckman.

This Memorandum Opinion and Order resolves Docket Entry Number 24.

SO ORDERED.

Dated: New York, New York
       April 27, 2016

                                                            /s/ Laura Taylor Swain
                                                           LAURA TAYLOR SWAIN
                                                           United States District Judge